Jasen, J. (dissenting).
I disagree with the majority’s construction of sections 705 (subd. [a]) and 709 (subd. [a], par. [2]) of the Business Corporation Law.
Section 709 (subd. [a], par. [2]) specifically allows a corporation to include in its certificate of incorporation a super-majority provision for the transaction of corporate business. The purpose of such a provision is to protect minority interests, particularly in a close corporation, so that they can effectively block corporate actions contrary to their interests. Pursuant to that section, the Five Ivy Corporation placed in their corporate charter a provision requiring the assent of 75% of the directors “for the transaction of any business”. (Emphasis supplied.) I agree with petitioner’s contention that the election of director Brody was in violation of this provision, since his election, by a 2-1 vote of the remaining directors, constituted only 67 % of the vote.
Certainly, the filling of vacancies on the board, of directors falls within the definition of “ transaction of any business ” as specified in the corporate charter. The term, as used in the certificate of incorporation, has a broad scope and there are no exceptions listed from the word ‘ ‘ any ’ ’. Thus, it appears that, in validating the election, we would be abrogating the effect of section 709 (subd. [a], par. [2]) and the intent of the corporate founders.
It is true that an invalidation of the election of director Brody could result in continued deadlock for the corporation. However, this is the risk that the corporation imposed upon itself when the 75% voting requirement was enacted, Indeed, the *73 Legislature has specifically -chosen to permit close corporations free reign as to voting requirements, with the probability of stalemate well in mind. Judicial dissolution has been made available to the deadlocked corporation (Business Corporation Law, § 1104) or contingency provisions may be placed in the certificate of incorporation. The possibility of deadlock and dissolution always exists when supermajority provisions are used. The fact that such a contingency occurs should not be sufficient reason to abrogate the provisions which were designed to protect minority interests in precisely such a situation.
Nor is section 705 (subd. [a]) designed to meet the present situation. That section was not intended to solve the problem of corporate deadlock, but rather was enacted to alleviate the situation such as was present in Matter of Caplan v. Lionel Corp. (20 A D 2d 301, affd. 14 N Y 2d 679), where a quorum could never exist because of vacancies on the board. Thus, the effect of section 705 (subd. [a]) may be to provide a quorum here, but it certainly does not vitiate the supermajority provision, expressly permitted by section 709 (subd. [a], par. [2]), setting forth requirements for the transaction of business.
Nor can it be said that the reference in section 705 (subd. [a] ) to a majority vote is controlling here. A majority vote is specified only to clarify that election may be by a majority of the directors still in office, as distinguished from a majority of the total board—not to prohibit a higher proportion by operation of a 709 (subd. [a]) provision.
In sum, even though corporate deadlock is unfortunate, it is a risk that the parties knowingly undertook by placing the supermajority provisions in their certificate of incorporation. The purpose of section 705 (subd. [a]) was not intended to alleviate the situation present here. In order to give effect to the intent of the parties and render vitality to section 709 (subd. [a], par. [2]), a reversal is mandated.
Chief Judge Fuld and Judges Burke and Bergan concur with Judge Gibson ; Judge Jasen dissents and votes to reverse in a separate opinion in which Judge Scileppi concurs; Judge Breitel taking no part.
Order affirmed.